THE PEOPLE OF THE STATE OF NEW YORK ex rel. LOUIS H. PINK, Superintendent of Insurance of the State of New York, as Rehabilitator of BOND AND MORTGAGE GUARANTEE COMPANY, and BOND AND MORTGAGE GUARANTEE COMPANY, Relators, *v.* HARRIS H. MURDOCK and Others, as Commissioners of the Board of Standards and Appeals, Constituting the Board of Standards and Appeals of the City of New York, Respondents.

Supreme Court, Special Term, Kings County, November 24, 1937.

*J. Donald Whelehan* [*E. Robert Willcox* of counsel], for the relators.

*Paul Windels, Corporation Counsel* [*David I. Shivitz* of counsel], for the respondents.

SMITH, J.  Counsel for both parties appeared before me on October 11, 1937, and consented and stipulated to the vacation of an order made by me and entered on August 17, 1937, denying this application without a consideration of the merits and to the withdrawal of my memorandum dated August 9, 1937, and to my determination either granting the application to dismiss the certiorari order or denying it and sustaining the certiorari order on the merits.  Accordingly, I direct that that order is vacated and that memorandum is withdrawn and the following is the decision of the court determining the application on the merits:

Respondents, the board of standards and appeals, make this application " for a final order dismissing the order of certiorari herein and affirming " their determination. The motion is based upon all the papers on file, to wit, relators' petition verified March 31, 1937, the order of certiorari issued thereon by this court without notice on April 5, 1937, respondents' return verified June 21, 1937, filed pursuant to the certiorari order, and the transcript of the record attached to respondents' return.

The petition upon which the certiorari order was granted alleges that the Bond and Mortgage Guarantee Company, by a referee's deed in foreclosure, on August 11, 1936, became the owner of premises 337 Avenue O, Brooklyn; that the frame building on these premises since 1920 has been equipped and maintained as a three-family dwelling and has been used and occupied by three families maintaining separate kitchens and living independently of each other; that the petitioner presented to the commissioner of buildings of the borough of Brooklyn plans for the alteration of the building so as to make it comply in all respects with the provisions of the Multiple Dwelling Law applicable to converted multiple dwellings; that the commissioner rejected the plans and refused to issue a permit for the alterations on the ground that the building, by reason of section 56 of the Multiple Dwelling Law, cannot be accepted " as a hereafter converted dwelling." These facts are not denied.

It also appears without dispute that this building was originally erected in 1909 as a two-family dwelling and that the building department has no record of its conversion to a three-family dwelling. The board of standards and appeals affirmed the decision of the commissioner of buildings and held that, despite the actual physical conversion and use of the building as a three-family dwelling since 1920, the absence of any record in the building department showing approval of such conversion and use rendered the conversion and use illegal, and hence, in contemplation of law, the building came within the prohibition of section 56 of the Multiple Dwelling Law, which provides that " No frame building not now used as a multiple dwelling shall hereafter be altered or converted to such use." Relators contend that the record of the building department is immaterial, and that, since the building was actually converted into a multiple dwelling and has been used as such for many years prior to the enactment of the Multiple Dwelling Law, section 56 is not a bar to the alterations they desire to make and to the continued legal occupancy of the building as a multiple dwelling.

There is thus no dispute as to the facts. The question is purely one of law, namely, whether, within the meaning of section 56 of the Multiple Dwelling Law, the prohibition against the alteration and conversion of a frame building extends to every such building not now legally used as a multiple dwelling, that is, not now used as a multiple dwelling with the written or record approval of the building department. In my opinion the statute means exactly what it says — that no frame building not now used as a multiple dwelling shall be converted. This clearly refers to the actual physical use of the building and not to the fictional legal use or the use which the building department at one time may have a record of authorizing.

The meaning of the statute is plain and explicit. There is no reason to refuse to read it as written. There is no reason for interpolating the word " legal," for neither the letter nor the spirit of the statute requires such interpolation. Clearly, if the use of the building were already legal, it would be idle for relators to ask for permission to alter it. It is precisely because the building is physically but not legally used as a multiple dwelling that relators seek to alter it to conform to the present legal requirements of a multiple dwelling. Indeed, section 13 of the Multiple Dwelling Law expressly provides: " § 13. Application to existing dwellings. Any building heretofore erected and occupied at the time this chapter becomes effective, or thereafter, as a tenement house, which is not recorded as such in the department heretofore charged with the enforcement of the Tenement House Law, shall be required to comply with all of the provisions of this chapter governing the like class or kinds of dwelling hereafter erected."

The use of relators' building comes within the category of a tenement house as the latter term is used and defined in the statute. (Multiple Dwelling Law, § 4, subd. 9.)

The object of the statute, section 56 of the Multiple Dwelling Law, appears to be twofold: *First*, to permit frame buildings, which for a long period of time have been actually used as multiple dwellings, to be altered and converted to such use so that henceforth their use as multiple dwellings shall in all respects be legal and conform to all the requirements of the law; *second*, to prohibit or prevent the alteration or conversion of any frame building which at the time of the enactment of the statute was not actually used as a multiple dwelling.

Relators' building having been actually used as a multiple dwelling for a long time prior to the enactment of the statute, it comes both within the letter and the spirit of the law. Consequently, relators are entitled to have their building altered and con-

verted so that its use may be continued in conformity with the requirements of the law. Therefore, it was error to refuse approval of relators' plans and to refuse to issue a permit for the alteration on the ground assigned.

The motion to dismiss the certiorari order is denied, the certiorari order is sustained, and respondents are directed to approve relators' plans and to issue a permit for the alterations. Submit order on notice reciting the appearance and stipulation and the vacation of the prior order and the withdrawal of the prior decision referred to above.